WHITE, Appellant, v. HINES, Executrix, etc., Respondent.

St. Louis Court of Appeals, October 2, 1905.

ADMINISTRATION: Accounting. In an action against an administrator for a balance of money collected and not accounted for by the decedent, and for an accounting in regard to notes turned over to the decedent by the plaintiff for collection in his lifetime, the evidence is examined and held sufficient to justify a judgment for the defendant.

Appeal from Howell Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*James Orchard* for appellant.

*Orr & Luster* for respondent.

STATEMENT.

C. W. White, the plaintiff, was clerk of the circuit court of Texas county and ex-officio recorder of deeds in 1893. Indictments were preferred against him by the grand jury of that county for malfeasance in office, and suits were brought upon both of his official bonds and he became a fugitive from justice. Prior to his absconding he executed two assignments to his attorney, V. M. Hines, Esquire, for the purpose of securing the sureties on his official bonds. The first was executed February 17, 1894. By it he transferred to Mr. Hines, promissory notes aggregating the principal of $2,391.45, in trust, the proceeds to be applied to the payment of any judgment that might be recovered against him and his sureties in suit on his bond as clerk of the circuit court. The second assignment was also of promissory notes, the

principal of which amounted to $1,812.05 and was in trust to apply to the payment of any judgment that might be recovered in suit on his bond as recorder. Subsequently, White assigned to Hines other promissory notes amounting to $394.00 for the purpose of securing attorneys' fees to Woodside & Hines, whom he had employed to defend the bond suits and to represent him in other matters in litigation then pending or which might be thereafter brought against him. To further secure his attorneys, White, on January 5, 1895, assigned all the notes included in the first and second assignments to Woodside & Hines, subject to the two prior assignments. In this latter assignment, he authorized Hines to collect all of the assigned notes and after satisfying the trusts and payment of attorneys' fees, to pay the balance, if any, to Betty White, wife of plaintiff. Hines accepted the trusts created by the several assignments and proceeded to collect the assigned notes. He opened two accounts with himself and two with the Bank of Houston, one of which accounts was under the head of "Recorder's Bond Account." Hines' book of accounts under this head shows that he collected $1,711.95 and that he credited himself with $788.04, leaving a balance against him on this account of $923.93. The other account was headed, "Circuit Clerk's Bond." Under this heading, the books of Hines show he charged himself with $2,359.16 as collected, and credits of $2,165.35, leaving a balance on this account of $193.61. Hines' books also show that for certain property sold belonging to White, and collections made on notes not embraced in any of the assignments, he charged himself with $894.04 and that he credited himself on this miscellaneous account with $880.97, leaving a balance of $13.05 against him. It is shown and not denied by any evidence that Hines paid Clark Dooley, Esq., the sum of $300 on White's account, for which he failed to give himself credit. It was also shown by the evidence and not denied that Hines paid the Southern Agency Investment

Company $1,323 at different times for the purpose of cancelling a mortgage upon lands owned by White, and that he failed to credit himself with $955 so paid to said investment company. Hines died before collecting all the notes and before fully discharging the trust. At the date of his death he had on deposit with the Houston Bank to the credit of the trust fund, the sum of $1,648.05. The bank brought an interpleader's suit in respect to this fund against Hines' executrix, L. B. Woodside, the county of Texas, and Betty White and C. W. White, the only claimants of any interest in the fund. The suit resulted in a final judgment, finding that the executrix of Hines' estate was entitled to $595 as attorney's fees due Mr. Hines; that a like attorney's fee was due L. B. Woodside; that the county of Texas was entitled to $33.59, and that Betty White was entitled to the balance of $424.43. This judgment was not appealed from and hence it is *res adjudicata* as to the fund of $1,648.05. On February 24, 1900, the defendant executrix caused to be delivered to plaintiff, through the Norman State Bank at Norman, Oklahoma, sundry of the assigned notes which had not been collected, the principal of which aggregated $603.25.

The petition is in four counts. The first count alleges that the estate of Hines is indebted to the plaintiff in the sum of $450 as balance collected and not accounted for on the notes included in the assignment of February 17, 1894. The second count alleges that the estate is indebted to plaintiff in the sum of $350 collected on the note of Levi McCaskill, $100 for a span of mules sold by Hines and a balance of $83 on the sale of abstract books and one iron safe. The third count asks judgment for $1,133 for money had and received. The fourth count prays an accounting of the notes turned over to Hines.

The answer put at issue all the material allegations of the several counts of the petition. The issues were submitted to the court, who after hearing the evidence,

found for the defendant and rendered judgment accordingly.

BLAND, P. J. (after stating the facts).—With the exception of items to be noted below, it is not contended by appellant that Hines did not pay out the sums of money for which he gave himself credit on his own books or that he made any payment or payments that were not legitimate and proper to be made. On the recorder's bond, account, Hines gave himself credit for $200 paid to Betty White on July 2, 1897. On his clerk's bond account, he entered a credit of $200 on the same day as paid to Betty White. It is contended by appellant that but one payment of $200 was made on July 2, 1897, to Mrs. White. Hines being dead, there was no witness to explain this apparent duplicate credit for $200, and respondent concedes that one or the other of the entries is probably erroneous and does not resist the contention of appellant that one of them should be eliminated from the calculation in stating the account between the estate of Hines and plaintiff. Hines credited himself with $50 attorney's fees for services rendered White at the November term, 1893, of the Texas Circuit Court and $200 attorney's fees at the November term, 1894, of the same court. Plaintiff, in his deposition, denies that he owes these fees. He does not deny that the services were rendered by Hines as his attorney, but testified that he had paid Hines for all services except those rendered after the employment of Hines & Woodside in January, 1895. White does not state in his deposition when, where or in what he paid for the services, and considering the seriousness of the difficulties in which he was involved about this time, and the disposition he made of his personal assets during this period, and his flight from the State, it is probable that his memory is at fault in respect to the payment of these fees to Mr. Hines. The learned trial judge considered the entry of the credits by Mr. Hines on his books of accounts as en-

titled to greater weight than the general and unsatisfactory statement of Mr. White that he had paid the fees. All things considered, we are not disposed to find fault with this finding of the trial court.

It is claimed and the evidence shows that Hines sold White's abstract books and one iron safe to M. G. Coyle for $243. He charged himself on account of these items with $160. His account should therefore be charged with the $83. W. D. Beck testified that White owned a span of mules which he purchased from Mr. Hines for $100 cash. This item is nowhere found on Mr. Hines' books of account and should be charged against the estate.

The evidence shows that the following assigned notes were collected by Hines but are not charged on his books of account.

| | |
|---|---:|
| Note of A. J. Snelson for.................... .... | $114.00 |
| Note of Levi McCaskill for................ | 360.00 |
| Two notes of E. B. Dickinson, aggregating.. | 366.00 |
| Total.......................... | $840.00 |

If to this total is added the $200 erroneously credited as paid to Mrs. White, the balance of $183 for the sale of the mules, safe and abstract books, we have $1,223 that should be added to the charges against the estate. If this is done, the estate will stand charged as follows:

| | |
|---|---:|
| Collected as shown by Hines' book of account, recorder's bond acc't,...........................  | $1,711.97 |
| Collected on clerk's bond acc't, ................ | 2,359.16 |
| Miscellaneous acc't, ...................... .. | 894.02 |
| Items omitted as above stated, ................ | 1,223.00 |
| Total,...... ......... .. ........ | $6,188.15 |

The evidence shows that the estate is entitled to the following credits:

| | |
|---|---:|
| Credit to recorder's bond acc't,.... ........ | $ 788.04 |
| Credit on clerk's bond acc't, .... .... ...... | 2,165.35 |
| Credit on Miscellaneous acc't, ...... .... .... | 880.97 |

Paid to Southern Agency Co. for which no
    credit was given on Hines' books,.. ....    955.00
Paid to Clark Dooley,.... .. ............    300.00
In bank to credit of trust, .... ........... .. 1,648.05

           Total credits, ...... ...... ......  $6,737.41
Balance due the estate, .. ............ .... ....  $ 549.41

The fourth count is in equity. It asks for an accounting of defendant as administratrix of the assets of White which were placed in the hands of Mr. Hines. There was no separate trial of this count and no evidence was introduced in support of it except what appears in plaintiff's deposition to the effect that certain notes he assigned to Hines had not been accounted for in lists of notes furnished him by the defendant. There is an exhibit of the private account of Betty White in the record in which it appears that a number of assigned notes were put in her hands by Mr. Hines. It is also shown that the administratrix caused a number of the assigned notes to be delivered to plaintiff. Presumably she delivered all that came into her hands as executrix and there is no substantial evidence to overthrow this presumption, and as the finding of the trial court is a general one for the defendant, we must conclude that the court found there was nothing in the hands of the administratrix to account for and that Mr. Hines had honestly and faithfully administered the trust committed to him by the plaintiff. The omission of both charges and credits on Mr. Hines' books of account can be accounted for on the ground that he was a very sick man for some time prior to his death. His residence, too, was in West Plains while the business of the trust was at Houston, Missouri. On account of his ill condition, his visits to the latter city to look after the interests of the trust were necessarily hurried and made under difficulties. As suggested by appellant's counsel in his brief, had Hines lived, no controversy between him and Mr. White in respect to the trusts would have arisen. We think

the evidence conclusively shows that none should have arisen between appellant and Hines' administratrix.

The judgment is affirmed. *Nortoni* and *Goode, JJ.,* concur.